IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | | |
|---|---|---|
| PHILLIP B. HADLEY and TAMMY D. HADLEY, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | No. 3:04-CV-121 |
| BILLY R. INMON, *et al.*, | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

This civil action is before the court for consideration of the motion for summary judgment filed by defendants, Billy R. Inmon and N. Kathern Inmon (collectively "the Inmons or defendants") [doc. 29]. Plaintiffs, Phillip B. Hadley and Tammy D. Hadley (collectively "the Hadleys or plaintiffs") have filed a response in opposition to the motion [doc. 47], and the Inmons have submitted a reply [doc. 48]. For the reasons stated herein, the motion for summary judgment will be granted, and plaintiffs' claims will be dismissed. A hearing will be held concerning the injunctive relief requested in defendants' counter-claim.

I.

*Summary Judgment Standard*

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Canderm Pharmacal, Ltd. v. Elder Pharms., Inc.*, 862 F.2d 597, 601 (6th Cir. 1988) (quoting Fed. R. Civ. P. 56(c)). The moving party may discharge its burden by demonstrating that the non-moving party has failed to establish an essential element of that party's case for which he or she bears the ultimate burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). The moving party need not support its motion with affidavits or other materials negating the opponent's claim. *Celotex Corp.,* 477 U.S. at 323, 106 S. Ct. at 2553. Although the moving party has the initial burden, that burden may be discharged by a "showing" to the district court that there is an absence of evidence in support of the non-moving party's case. *Celotex Corp.*, 477 U.S. at 325, 106 S. Ct. at 2554.

After the moving party has carried its initial burden of showing that there are no genuine issues of material fact in dispute, the burden shifts to the non-moving party to present specific facts demonstrating that there is a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed.

2d 538 (1986). "The 'mere possibility' of a factual dispute is not enough." *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582 (6th Cir. 1992) (citing *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)). In order to defeat the motion for summary judgment, the non-moving party must present probative evidence that supports the complaint. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S. Ct. 2505, 2510-11, 91 L. Ed. 2d 202 (1986). The non-moving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor. *Liberty Lobby,* 477 U.S. at 255, 106 S. Ct. at 2513. The court determines whether the evidence requires submission to a jury or whether one party must prevail as a matter of law because the issue is so one-sided. *Liberty Lobby,* 477 U.S. at 251-52, 106 S. Ct. at 2512.

II.

*Background*

For the purposes of summary judgment, the facts as presented by plaintiffs are taken to be true. *See 1064 Old River Rd. v. City of Cleveland*, Nos. 04-3541, 04-3716, 2005 WL 1386470 (6th Cir. June 2, 2005). The facts that follow are those according to the plaintiffs.

On November 17, 2001, plaintiffs attended an auction held by the Small Business Administration ("SBA")[1] for property located at 1199 Highway 139, Dandridge,

---

[1] In the original complaint filed *pro se* by plaintiffs, the SBA was named as a defendant. The SBA, along with two other original defendants, Harold J. Freeman and Allen J. Ware, was voluntarily dismissed in August 2004 [doc. 19].

3

Tennessee and operated as the Mountain Harbor Inn. Plaintiffs were the high bidders for the property and as such were required to make a down payment of $35,385.00, which was 10% of the total purchase price of $353,850.00. The balance had to be paid within 20 days.

On December 5, 2001, defendants were dining in plaintiffs' restaurant and approached plaintiffs about providing the financing for the property. Plaintiffs contend that they already had private financing in progress but Billy Inmon persuaded them to allow him to finance the purchase. Plaintiffs also claim that it was their understanding they would own the property and execute a mortgage /deed of trust to the defendants. Phillip Hadley met with the defendants at the Mountain Harbor Inn on or about December 6, 2001, and his understanding remained after the meeting that he and his wife would own the property and execute a mortgage/deed of trust to defendants.

On the evening of December 27, 2001, plaintiffs received the closing documents via fax with instructions that the documents had to be signed by December 29, 2001. Plaintiffs contend that they were unable to have their attorney review any of the documents because of the closing date set by the defendants and the deadline for the SBA closing, which had to be met in order for plaintiffs not to lose their deposit. Plaintiffs claim that they have no expertise in business or legal matters and did not understand the documents they received from defendants. They also contend that they had no prior experience with private financing.

4

On December 29, 2001, plaintiffs attended what they thought was to be the execution of a mortgage/deed of trust. They believed that the "Lease Agreement" they executed on that date was a mortgage/deed of trust. They contend that the "Lease Agreement" attached to the affidavit of Billy Inmon is not the document they signed. Also according to plaintiffs, the deposit amount and credit for the February through May 2002 payments were not in the document entitled "Lease Assignment" that they executed. Both plaintiffs also claim that they do not recall signing the Assignment of Bid on December 29, 2001, and that they believe the Assignment is a forgery.

Plaintiffs operated a bed and breakfast on the property from the time they took possession on November 17, 2001, until removed as a result of the detainer action by defendants. It is undisputed that on January 23, 2004, Billy Inmon initiated a detainer action in the General Sessions Court of Jefferson County, Tennessee against the Hadleys that sought possession of the property. Mr. Inmon alleged that he was the owner of the property and that the Hadleys breached the lease they had entered into. A copy of the lease was attached to the suit papers. On July 26, 2004, the General Sessions Court heard the matter and entered an order finding that the Hadleys had breached the lease by failing to pay rent; that Billy Inmon was entitled to possession of the property; that Billy Inmon was entitled to recover equipment, inventory, furniture and fixtures located on the property; and that Billy Inmon was entitled to recover a judgment against the Hadleys in the amount of $26,399.60.

The Hadleys appealed to the Circuit Court of Jefferson County. However, the Circuit Court determined that the bond the Hadleys posted was insufficient, and it dismissed the appeal and remanded the case to the General Sessions Court. The General Sessions Court then issued a writ of possession that restored possession of the property to Billy Inmon.

With regard to the appeal of the action in the General Sessions Court for Jefferson County, Tennessee, plaintiffs state that they posted the bond as instructed by the General Sessions Court, but the Circuit Court for Jefferson County decided the plaintiffs had not posted sufficient bond and dismissed the appeal without the opportunity for them to be heard. They contend that within hours of the dismissal defendants had a writ of possession and that they had no time to appeal or request reconsideration of the dismissal before being removed from the property.

According to plaintiffs, they first discovered the fraudulent acts of the defendants in December 2003 while preparing for a tax audit.

Plaintiffs maintain that they did not transfer the business name "Mountain Harbor Inn" to the defendants, and they believe that defendants do not have a legal right to that name. Plaintiffs also believe that they are the rightful owners of the business name "Mountain Harbor Inn" and that the defendants are using the name without their permission. Plaintiffs claim that the phone listing for "Mountain Harbor Inn Reservations" was their home number and a three-year contract for the listing was entered into before they were removed from the property.

6

III.

*Analysis*

A. Res Judicata and Plaintiffs' Claims

Defendants argue that all of plaintiffs' claims are barred by the principle of res judicata. The court agrees. Res Judicata is a claim preclusion doctrine that promotes finality in litigation. *Lien v. Couch*, 993 S.W.2d 53, 55 (Tenn. Ct. App. 1998) (citations omitted). "The principle of claim preclusion prevents parties from splitting their cause of action and requires parties to raise in a single lawsuit all the grounds for recovery arising from a single transaction or series of transactions that can be brought together." *Id*. at 56 (citations omitted).

"Res Judicata bars a second suit between the same parties on the same cause of action as to all issues which were or *could have been litigated* in the former suit." *Collins v. Green County Bank*, 916 S.W.2d 941, 945 (Tenn Ct. App. 1995) (emphasis added); *see also Richardson v. Tenn. Bd. of Dentistry*, 913 S.W.2d 446, 459 (Tenn. 1995); *Brown v. Brown*, 29 S.W.3d 491, 495 (Tenn. Ct. App. 2000). "It has long been the rule in this state that not only issues which were actually determined, but all claims and issues which are relevant and which could reasonably have been litigated in a prior action, are foreclosed by the judgment therein." *Boyd v. Bruce*, No. M2000-03211-COA-R3-CV, 2001 WL 1346264, at *4 (Tenn. Ct. App. Nov. 2, 2001) (citing *American Nat'l Bank & Trust Co. v. Clark*, 586 S.W.2d 825, 826 (Tenn. 1979)). In *McKinney v. Widner*, 746 S.W.2d 699 (Tenn. Ct. App.

7

1987), the Tennessee Court of Appeals addressed this aspect of res judicata.

> The doctrine of res judicata is based on the principle not only that the same parties in the same capacities should not be required to litigate anew a matter which might have been determined and settled in the former litigation, but that litigation should be determined with reasonable expedition, and not be protracted through inattention and lack of diligence.
>
> . . .
>
> The rule requires that the *whole subject of the litigation* be brought forward by the parties, and the judgment concludes all matters, *whether of action or defense*, legally pertaining to that subject which, by the exercise of reasonable diligence, might have been brought forward.
>
> . . .
>
> This Court cannot accept the argument of appellant that, by disclaiming or failing to present a particular fact or theory supporting his action, a plaintiff may thereby reserve and preserve the disclaimed and unpresented fact or theory as an "ace in the hole" to be used as a ground for a second lawsuit based on such ground. To assent to plaintiff's insistence would be to condone piecemeal presentation of *suits and defenses* at the whim of the parties. Such is not the policy of our law and is contrary to the authorities set out above.

*Id.* at 705-06 (internal citations omitted) (emphasis added).

"Parties asserting a res judicata defense must demonstrate that (1) a court of competent jurisdiction rendered the prior judgment, (2) the prior judgment was final and on the merits, (3) the same parties or their privies were involved in both proceedings, and (4) both proceedings involved the same cause of action." *Lien*, 993 S.W.2d at 56; *see also Young v. Barrow*, 130 S.W.3d 59, 64 (Tenn. Ct. App. 2003); *Collins*, 916 S.W.2d at 945.

8

After applying these principles to the facts herein, the court concludes that the matters in this case were actually litigated or could have been litigated in the state court action in which the Inmons sought and obtained possession of the real property containing the Mountain Harbor Inn. The Inmons have satisfactorily demonstrated the four requirements for application of the res judicata as a defense.

Defendant Billy Inmon filed suit in the General Sessions Court of Jefferson County, Tennessee against the Hadleys for possession of the subject property and breach of the Lease Agreement entered into by the Hadleys and Inmons. He initiated suit after the check for the November 2003 payment was returned unpaid for insufficient funds. A copy of the Lease Agreement was attached to the detainer warrant served on the Hadleys and was thus clearly before the Court.

The order entered by the General Sessions Court reveals that the matter was heard on July 26, 2004.[2] It states that "based upon the testimony of witnesses, the arguments of counsel and the record as a whole," the Court found that the Hadleys breached their lease by failing to pay rent; Billy Inmon was entitled to possession of the subject property; Billy Inmon was entitled to recover equipment, inventory, furniture and fixtures located on the subject property; and Billy Inmon was entitled to recover a judgment against the Hadleys in the amount of $26,399.60. The Hadleys appealed the decision to the Circuit Court for

---

[2] On the first two dates when the matter was set for trial, plaintiffs filed bankruptcy actions. Both sides have presented considerable facts and argument concerning these bankruptcies. However, the court has determined that the bankruptcy information is not necessary to its rulings on the pending motion.

9

Jefferson County, Tennessee. However, the Hadleys did not post a bond sufficient to meet the requirements of Tenn. Code Ann. § 29-18-130, and the Circuit Court dismissed the appeal and remanded the case to the General Sessions Court. The General Sessions Court then issued a writ of possession that restored possession of the property to Billy R. Inmon.

Although the Hadleys make vague references to the fact that this decision is on appeal, there is no evidence whatsoever in the record that the decisions of the General Sessions Court and the Circuit Court are on appeal. Thus, it is apparent that a court of competent jurisdiction rendered a prior judgment, the prior judgment is final and on the merits, and the same parties involved in this case were involved in the state court action.

It is also apparent that the fourth requirement for res judicata, a showing that this proceeding and the state court proceeding involve the same cause of action, has been demonstrated. At the core of the state court proceeding was the Lease Agreement that plaintiffs want to challenge in this case as well as the ownership of and the right of possession to the subject property. While in this case plaintiffs characterize their claims as being for inducement to breach their contract with the SBA and violation of the Tennessee Consumer Protection Act ("TCPA"), their claims involve the same causes of action and issues that were before the state court, the ownership and entitlement to possession of the property and the nature and validity of the Lease Agreement. The state court decided that the Lease Agreement was valid, that the Hadleys had breached it, and that Billy Inmon was entitled to possession of the property. This court will not permit relitigation of those findings

10

by the state court.

In addition, the claims and theories plaintiffs raise in this court could have been raised in the state court action. "A change in [the plaintiffs'] theory of liability does not create a new cause of action. Tennessee law is clear that *res judicata* bars the litigation of all issues that could have been litigated and all facts pertaining to those issues that could have been brought forward." *Boyd*, 2001 WL 1346264 at *4. "Where all 'claims and theories' asserted in the later litigation had accrued and were available for litigation in the prior action, *res judicata* applies." *Id*. (citation omitted).

The claims and theories of recovery alleged in this case were known to plaintiffs when the state court detainer action was initiated in late January of 2004. Plaintiffs claim they did not discover defendants' "unlawful act or practice" until December 2003[3]; however, this was clearly before the state court action was initiated. Thus, plaintiffs' claims based on defendants' actions concerning the auction bid and the alleged coercion and forced execution of the Lease Agreement all could have been raised as either defenses or counter-claims to the detainer action. The claims and theories presented here are certainly part of the same cause of action that was before the General Sessions Court and should have been raised there. They were not, and res judicata applies to bar litigation of them in this court.

---

[3] As discussed below, however, this is a self-serving affidavit statement made after defendants moved to dismiss the TCPA claim based on the statute of limitations. The statement is inconsistent with the allegations in the amended complaint and is not supported by any evidence in the record.

11

However, even if plaintiffs' claims were not barred by res judicata, summary judgment in favor of defendants and dismissal of plaintiffs' claims would still be appropriate. The TCPA claim is barred by the statute of limitations, and plaintiffs cannot establish a claim for inducement to breach contract under Tenn. Code Ann. § 47-50-109.

**Tennessee Consumer Protection Act Claim**

The TCPA provides for a one year statute of limitations. Tenn. Code Ann. § 47-18-110. When a plaintiff alleges a violation of the TCPA, a federal court "must apply the procedural law, including statutes of limitations, of the forum state . . . ." *Mackey v. Judy's Foods, Inc.*, 867 F.2d 325, 328 (6th Cir. 1989). Under Tennessee law, a "cause of action accrues and the statute of limitations begins to run when the injury occurs or is discovered, or when in the exercise of reasonable care and diligence, it should have been discovered." *Potts v. Celotex Corp.*, 796 S.W.2d 678, 680 (Tenn. 1990); *see also McCroskey v. Bryant Air Conditioning Co.*, 524 S.W.2d 487, 491 (Tenn. 1975). A plaintiff cannot wait [ to file suit] until he or she knows every injurious effect or consequence of the wrong. *Ameraccount Club, Inc. v. Hill*, 617 S.W.2d 876, 878 n.1 (Tenn. 1981).

Plaintiffs aver the following in the amended complaint:

> 11. The defendants, through contrivance or otherwise, convinced Allen Ware and the Small Business Administration to sell the property directly to the defendants. This was done without the knowledge or permission of their fiduciaries Brett and Tammy Hadley.

12

> 12. The defendants then presented the plaintiffs with a contract which for the first time evidenced to the Hadleys that the Inmons had usurped their business opportunity.
>
> 13. The defendants then coerced and forced the plaintiffs to execute the contract by representing to the plaintiffs that their initial investment would be lost should they not follow through in the transaction as set forth by the defendants.

The amended complaint was filed on August 19, 2004. In May, 2005, defendants filed their motion for summary judgment in which they argued that the TCPA claim is barred by the statute of limitations. With their motion they included documentation showing that the execution of the contract, i.e., the Lease Agreement, referred to in paragraph 13 of the amended complaint occurred on December 29, 2001. In the affidavits and arguments plaintiffs submitted in response to the motion for summary judgment, they contend that they "first discovered the fraudulent acts of the Inmons in December 2003 in the course of an audit for federal income tax preparation purposes." However, these statements are self-serving and inconsistent with the position taken in the amended complaint that was filed many months prior to defendants challenging the timeliness of the TCPA claim.

In addition, the plaintiffs do not present any evidence demonstrating what it was they discovered that put them on notice of the alleged fraudulent acts; they do not even identify what the information was. All they provide are their conclusory statements concerning discovery of the TCPA claim in December 2003 that purportedly show that the

13

claim was timely filed. However, no factual or documentary support for their allegations is provided. *Slowiak v. Land O'Lakes, Inc*., 987 F.2d 1293, 1295 (7th Cir. 1993) ("Self-serving affidavits without factual support in the record will not defeat a motion for summary judgment.") (citing *Kornacki v. Norton Performance Plastics*, 956 F.2d 129 (7th Cir. 1992)).[4] Nor do plaintiffs make any effort to explain how in August of 2004 they contended that the first time they had evidence that defendants had usurped their business opportunity was when they were presented with the contract but in August of 2005 they contended that they discovered the defendants' "fraudulent acts" while preparing for a tax audit.

      What is clear from the plaintiffs' affidavits and the documents submitted by defendants is that the presentation of the contract referred to in paragraph 12 and the coercion and the forced execution of the contract referenced in paragraph 13 occurred on December 27 and 29 of 2001. The original complaint in this lawsuit was not filed until March 2004 more than one year later. The plaintiffs knew at the time of the execution of the contract whether or not they were being coerced and forced into executing it and the basis for the coercion; that conduct was not something they discovered two years later while preparing for a tax audit. Accordingly, plaintiffs were required to file their TCPA claim within one year of events that occurred in late December 2001.

---

[4] This circumstance is not unlike the prohibited practice where a plaintiff attempts to create a factual issue to defeat summary judgment by submitting an affidavit that contradicts a prior statement in a deposition. *See Jones v. Gen. Motors Corp*., 939 F.2d 380, 385 (6th Cir. 1991).

14

The record thus demonstrates that the plaintiffs knew or in the exercise of reasonable care and diligence should have known that the alleged deceptive actions of the defendants, those on which their TCPA claim is based, occurred in late December of 2001. In light of the credible evidence in the record, no reasonable juror could find that plaintiffs were not on notice in late December, 2001 of the actions that comprise their TCPA claim. Because the complaint was filed more than one year later, the TCPA claim is barred by the applicable statute of limitations.

**Inducement to Breach Contract Claim**

Paragraph 16 of the amended complaint states as follows:

> 16. Plaintiffs further aver that the actions of the defendants in usurping their business opportunity with the Small Business Administration constitute a violation of T.C.A. § 47-50-109, as the defendants induced, through misrepresentation, the breach of contract between plaintiffs and the Small Business Administration. As a result thereof, your plaintiffs are entitled to treble damages.

"Section 47-50-109 of the Tennessee Code Annotated codifies the Tennessee common law claim for inducement to breach a contract, except to the extent that the statute permits an award of treble damages." *JIT Concepts, Inc. v. Shelby County Healthcare Corp.*, 358 F. Supp. 2d 678, 685 (W.D. Tenn. 2005) (citations omitted). To recover on a claim based on § 47-50-109, a plaintiff must establish seven elements: "(1) a legal contract existed; (2) the defendant was aware of the contract; (3) the defendant intended to induce a breach of contract; (4) the defendant acted with malice; (5) a breach of the contract occurred; (6) the

15

breach was a proximate result of the defendant's conduct; and (7) the breach injured the plaintiff." *Id*. at 686 (citing *Givens v. Mullikin*, 75 S.W.3d 383, 405 (Tenn. 2002)); *see also Wooley v. Madison County, Tennessee*, 209 F. Supp. 2d 836, 849 (W.D. Tenn. 2002).

As referenced above, plaintiffs contend that defendants induced the breach of the contract between the SBA and plaintiffs. However, there is no proof that this contract was breached. The record contains an Assignment of Bid (the Assignment) bearing the signatures of Brett Hadley and Tammy Hadley as assignors. The Assignment is an exhibit to the affidavit of Billy Inmon and states:

> Whereas the undersigned Brett Hadley, was the successful bidder at public auction of the real estate known as the Mountain Harbor Inn and located at 1199 Highway 139, Dandridge, Jefferson County, Tennessee; and
>
> Whereas the said Brett Hadley has elected to assign his bid, having made the high bid.
>
> Be it therefore known, that in consideration of Ten Dollars, receipt of which is hereby acknowledged, Brett Hadley does hereby assign and set over to Billy R. Inmon and N. Kathern Inmon, all of his rights and interest resulting from his successful bid on said real estate.[5]

The Assignment further reflects that it was executed on December 29, 2001, and was witnessed by two people. Billy Inmon states in his affidavit that the Assignment was executed at a bank in Columbus, Ohio where the Hadleys did business because the Hadleys indicated a notary public was available at the bank. He further states that the

---

[5] While the Assignment only refers to Brett Hadley, it was signed by both Brett and Tammy Hadley.

16

Hadleys signed the Assignment of Bid, that it was witnessed by Dawn S. Householder and April N. Nicholson, and that it was notarized by April N. Nicholson.

The plaintiffs attempt to create a material issue of fact and challenge the validity of the Assignment by including the following two paragraphs in each of their affidavits:

> 14. Contrary to Paragraph 8 of the Affidavit of Billy R. Inmon, I do not recall signing an Assignment of Bid, and the bank where we signed the documents was not a branch we did business with.
>
> 15. I believe the document entitled Assignment of Bid is a forgery.

These statements, however, do not meet the requirements of Rule 56(e) for summary judgment affidavits and do not create an issue of fact concerning the validity of the Assignment. Rule 56(e) requires that affidavits supporting or opposing summary judgment must include facts based on personal knowledge. Fed. R. Civ. P. 56(e). "[S]tatements made 'on information and belief' are insufficient to satisfy the personal knowledge requirement of Rule 56(e)." *Reddy v. Good Samaritan Hosp. & Health Ctr.*, 137 F. Supp. 2d 948, 956 (S.D. Ohio 2000) (citing *Automatic Radio Mfg. Co. v. Hazeltine Research*, 339 U.S. 827, 831, 70 S. Ct. 894, 94 L. Ed. 1312 (1950) (affidavit in support of motion for summary judgment made on information and belief does not comport with Rule 56(e)), *overruled on other grounds by Lear, Inc. v. Adkins*, 395 U.S. 653, 89 S. Ct. 1902, 23 L. Ed. 2d 610 (1969); *Sellers v. M. C. Floor Crafters, Inc.*, 842 F.2d 639 (2d Cir. 1988); *Tavery v. United States*,

17

32 F.3d 1423, 1426 n.4 (10th Cir. 1994); *Jameson v. Jameson*, 176 F.2d 58, 60 (D.C. Cir. 1949) ("Belief, no matter how sincere, is not equivalent to knowledge."); *Wilson v. Bernalillo*, No. 99-2197, 2000 WL 485129 (10th Cir. 2000); *Rice v. United States*, No. 96-0078, 1997 WL 792342 (D.N.M. July 2, 1997); 10B Charles Allan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2738 (3d ed. 1998)); *see also Mitchell v. Toledo Hosp.*, 964 F.2d 577, 584-85 (6th Cir. 1992); *Greene v. St. Elizabeth Hosp. Med. Ctr.*, No. 96-4308, 1998 WL 13410 (6th Cir. Jan. 7, 1998). "[A]n affidavit stating only that the affiant 'believes' a certain fact exists is insufficient to defeat summary judgment by creating a genuine issue of fact about the existence of that certain fact." *Pace v. Capobianco*, 283 F.3d 1275, 1278-79 (11th Cir. 2002) (citations omitted).

Thus, plaintiffs' statements that they "believe" the Assignment to be a forgery do not create an issue of fact as to the validity of the Assignment. Their statements that they "do not recall" signing the Assignment also do not demonstrate the personal knowledge required under Rule 56(e). In this context, stating "I did sign" or "I did not sign" the Assignment would demonstrate facts based on personal knowledge. The statement "I do not recall signing an Assignment of Bid" is not based on facts that satisfy the personal knowledge requirement of Rule 56(e) and does not defeat summary judgment. Accordingly, the validity of the Assignment of Bid is not in question.

This being the case, the record then shows that plaintiffs voluntarily assigned the their high bid over to the Inmons. Thus, there is no proof that the contract based on that

bid between the SBA and plaintiffs was breached. Nothing in the record demonstrates that SBA breached the contract or that defendants induced SBA to breach the contract. Plaintiffs relinquished their rights pertaining to their high bid to defendants, and the sale proceeded accordingly. Without a showing that a breach of contract occurred, plaintiffs cannot make out a case under § 47-50-109.

### B. Defendants' Counter-Claim

Defendants have asserted a counter-claim seeking a permanent injunction for control over the telephone number 865-484-1050 that is associated with "Mountain Harbor Inn Reservations" and to prohibit plaintiffs from interfering with the operation of their business "Mountain Harbor Inn." In support of their claim, defendants provide two affidavits from people who describe their experience when they attempted to call the Mountain Harbor Inn.

Jerry E. Colbert states in his affidavit that he called the number 865-484-1050 to confirm the time for a wedding rehearsal and was told that the Mountain Harbor Inn had burned down the day before. Mary Ann Love states that in November 2004 she called this same number wanting to schedule a bridge luncheon and was told that due to legal problems the court had shut down the Mountain Harbor Inn. Mary Love also states in her affidavit that in March 2005 she called the number 865-397-1313 and discovered that the Mountain Harbor Inn was open.

Plaintiffs make no reference to these affidavits in their response to the motion for summary judgment. They merely state in each of their affidavits that neither of them transferred the business name "Mountain Harbor Inn" to the defendants. Each of them also states, " I do not believe they [the Inmons] have any legal right to that name" and "I believe we are the rightful owners of the business name Mountain Harbor Inn." As referenced above, plaintiffs' statements in their affidavits concerning what they "believe" are insufficient for Rule 56(e) affidavits and do not defeat summary judgment.

However, the court finds that because the defendants are seeking a permanent injunction, a hearing is appropriate. Since this case will not be going to trial on February 22, 2006, that date will be used instead for a hearing on defendants' request for a permanent injunction as raised in their counter-claim.

For the reasons stated herein, defendants' motion for summary judgment will be granted, and plaintiffs' claims will be dismissed. A hearing will be held concerning the injunctive relief sought in defendants' counter-claim. An order consistent with this opinion will be entered.

ENTER:

s/ Leon Jordan
United States District Judge